**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| EDDIE LOWERY, on behalf of himself and other individuals similarly situated, known and unknown, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. ) ) |
| ADVANCEPIERRE FOODS, INC., | ) ) ) |
| Defendant. | ) |

**CLASS ACTION COMPLAINT**

Plaintiff Eddie Lowery ("Plaintiff"), on behalf of himself and other individuals similarly situated, known and unknown, brings this Class Action Complaint against Defendant AdvancePierre Foods, Inc. ("Defendant" or "AdvancePierre"), and he states as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1. Plaintiff brings this class action lawsuit against Defendant seeking all available relief under the Illinois Minimum Wage Law, 820 ILCS §§ 105/1 *et seq.* ("IMWL"), for Defendant's failure to pay all overtime wages for time he and other hourly employees were required to spend on the work premises at the beginning and end of the workday and for uncompensated meal break time that was spent predominantly for the benefit of the employer. Such time is compensable work time under the IMWL.

2. Plaintiff also brings this class action lawsuit seeking relief under the Illinois Wage Payment and Collection Act ("IWPCA") from Defendant's failure to pay all overtime wages and other earned compensation for time spent on Defendant's premises at the beginning and end of the workday and for uncompensated meal break time that was spent predominantly for the benefit of the employer.

3.	Defendant's failure to pay all earned overtime wages at the rate of one-and-one half times their regular rates to their employees, violates the Illinois Minimum Wage Law, 820 ILCS §§ 105/1 *et seq*.

4.	Defendant's failure to pay for all time worked by its Illinois employees violates the Illinois Wage Payment and Collection Act, 820 ILCS §§ 115/1 *et seq*.

## JURISDICTION AND VENUE

5.	This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Under CAFA, this Court has original jurisdiction over Plaintiff's Rule 23 class action claim because the matter in controversy is believed to exceed $5,000,000, and because Plaintiff and Defendant are citizens of different states.

6.	Plaintiff Eddie Lowery is a citizen of Illinois.

7.	Defendant is a citizen of Ohio and Delaware.

8.	The number of proposed class members exceeds 100 individuals.

9.	Venue is proper in the Southern District of Illinois pursuant to 28 U.S.C. § 1391(b) because Plaintiff and other Class Members performed work for Defendant within this District, a substantial number of the acts complained of herein occurred within this District, and Defendant has maintained offices and transacted business at all relevant times herein within this District.

10.	Plaintiff worked for Defendant in Caseyville, Illinois, which is in this District and Division.

## THE PARTIES

11.	Plaintiff Eddie Lowery is an individual residing in Caseyville, Illinois. At all

relevant times, Plaintiff has been domiciled in and is a resident of the State of Illinois.

12. The "Class Members," as further defined below, are current and former hourly paid employees of Defendant who have worked at the Poultry Processing Plants.

13. Defendant is incorporated in the state of Delaware.

14. Defendant is a corporation headquartered in Cincinnati, Ohio.

15. Defendant is registered to do business in Illinois.

16. At all material times, Defendant was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiff and Class Members. *See* Illinois Minimum Wage Law, 820 ILCS § 105/3(c).

17. At all material times, Defendant was Plaintiff's "employer" as defined in the IWPCA. 820 ILCS § 115/2.

18. Plaintiff was an employee of Defendant within the meaning of the Illinois Minimum Wage Law. 820 ILCS § 105/3(d).

19. Plaintiff was an employee of Defendant within the meaning of the IWPCA. 820 ILCS 115/2.

## FACTUAL BACKGROUND

20. Defendant is a wholly owned subsidiary of Tyson Foods, Inc.

21. Defendant is a protein and handheld foods processor and distributor to retail and grocery stores.

22. In order to support its operations, Defendant operates protein and handheld foods processing facilities in Illinois and across the country.

23. Defendant operates a protein and handheld foods processing plant located at 12 Tucker Drive, Caseyville, Illinois 62232 (herein referred to as the "Caseyville Plant").

24. Plaintiff worked as an hourly, non-exempt employee at the Caseyville Plant.

25. Plaintiff worked at the Caseyville Plant between approximately October 2024 to October 2025.

26. Plaintiff was regularly scheduled to work for Defendant at the Caseyville Plant from Monday through Friday.

27. Plaintiff primarily worked a schedule at the Caseyville Plant from Monday through Friday between 2:30 p.m. to 11:00 p.m. or 10:30 p.m. to 7:00 a.m.

28. Plaintiff also frequently performed work for Defendant on Saturdays.

29. In one or more individual work weeks in the three (3) years prior to the date this Complaint was filed, Plaintiff worked forty (40) or more hours at the Caseyville Plant.

30. In one or more individual work weeks in the three (3) years prior to the date this Complaint was filed, Defendant paid Plaintiff for working more than forty (40) hours a week.

31. Defendant employed more than 500 hourly paid workers at the Caseyville Plant in the three (3) years prior to the filing of the Complaint.

32. Defendant employed more than 500 hourly paid workers at the Caseyville Plant who worked at least 37.5 hours in a single work week in the three (3) years prior to the filing of this Complaint.

33. Defendant employed more than 500 hourly paid workers at the Caseyville Plant who worked at least 40 hours in a single work week in the three (3) years prior to the filing of this Complaint.

34. Plaintiff primarily worked the second and third shifts during his employment with Defendant.

35. Plaintiff regularly arrived at the Caseyville Plant approximately thirty (30) minutes before the start of his scheduled shift.

36. Plaintiff arrived at the Caseyville Plant prior to the start of his shift to prepare for his workday, which included undergoing security screenings and walking through the Caseyville Plant to retrieve and don protective clothing and equipment, which included, but was not limited to, steel toed boots, ear plugs, face mask, skull cap, coat, hooded sweatshirt, smock, hairnet, shirt, pants, and gloves.

37. Other Class Members arrived at the Caseyville Plant prior to the start of their shifts so they could undergo security screenings and walk through the Caseyville Plant and retrieve and don protective clothing and equipment.

38. At the beginning of the workday, Defendant required Plaintiff and other Class Members to wait in line to scan an ID badge at a turnstile located at the front of the Caseyville Plant.

39. Once through the turnstile, Plaintiff and other Class Members had to wait in line to walk through a metal detector. If Plaintiff or other Class Members set off the metal detector, Defendant performed a bag check and used a handheld metal detector wand to scan them.

40. Plaintiff and other Class Members next walked to the locker room to store their lunch, jacket, and other personal belongings and to don their protective clothing and equipment.

41. The protective clothing and equipment that Plaintiff and other Class Members were required to wear included, but is not limited to steel toed boots, ear plugs, glasses, face mask,

skull cap, coat, hooded sweatshirt, smock, hairnet, shirt, pants, gloves, aprons, plastic sleeves, and suspenders.

42.     Plaintiff and other Class Members were not permitted on the Caseyville Plant floors before donning protective clothing and equipment.

43.     Plaintiff estimates that he and other Class Members spent approximately seven to fifteen minutes donning protective clothing and equipment before each shift.

44.     After donning protective clothing and equipment, Defendant required Plaintiff and other Class Members to wait in line to clock in at the time clock station next to the locker room.

45.     After Plaintiff and other Class Members clocked in on the time clock, they then had to walk to their assigned work locations.

46.     Defendant did not begin to pay Plaintiff and other Class Members until they clocked in at the time clock station.

47.     Defendant did not pay Plaintiff and other Class Members for the time they were required to be on the Caseyville Plant's premises prior to the start time of their scheduled shift, including but not limited to the time they spent waiting to go through security screenings, donning protective clothing and equipment, walking within the Caseyville Plant, and waiting to clock in on the time clock. At the end of the workday, Defendant required Plaintiff and other Class Members to "clock out," and then walk through the Caseyville Plant and remove their protective clothing and equipment before undergoing security screenings and finally exiting the premise. Defendant did not pay Plaintiff and other Class Members for the time they were required to be in the Caseyville Plant after they clocked out on the time clock.

48.     Defendant did not pay Plaintiff and other Class Members for all time they were

required to be on the Caseyville Plant premises before they were permitted to exit.

49. Plaintiff was a full-time employee generally scheduled to work 40 to 48 hours per week. As such, his paid time combined with his unpaid time generally totaled over 40 hours per week.

50. The unpaid overtime hours should have been paid by Defendant because they constitute compensable time worked under the IMWL.

51. Under the IMWL, "hours worked" includes "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." 56 Ill. Admin. Code § 210.110.

52. The time Defendant required its hourly employees to be on the premises of the Caseyville Plant constitutes "hours worked" under the IMWL.

53. The pre-shift time Defendant required its hourly employees to be on the Caseyville Plant premises, including but not necessarily limited to the time Defendant required hourly employees to wait in line to undergo security screenings, don protective clothing and equipment, walk within the Caseyville Plant, and wait to clock in on the time clock constitutes "hours worked" under the IMWL.

54. The time Defendant required its hourly employees to walk within the Caseyville Plant after they clocked out, doff protective clothing and equipment, and wait in line to undergo security screenings constitutes "hours worked" under the IMWL.

55. In light of Defendant's conduct in not compensating Plaintiff and Class Members for all overtime hours worked under the IMWL, Plaintiff and Class Members are owed significant

unpaid overtime wages and penalties.

56. Defendant scheduled Plaintiff and other Class Members for thirty (30) minute unpaid meal breaks during each shift.  In practice, Plaintiff and other Class Members received far less than thirty (30) minutes of uninterrupted meal break time because Plaintiff and other Class Members were required to wash and sanitize their hands, doff their protective clothing and equipment in the clean room, and wait in line to clock out to start their meal break, while their thirty (30) minute unpaid meal break time was already running. Plaintiff and other Class Members were also required to wait in line to clock back in before the end of their thirty (30) minute unpaid meal break, wash and sanitize their hands, and don their protective clothing and equipment in the clean room so they would be on the Caseyville Plant floor by the end of their thirty (30) minute unpaid meal break.

57. Plaintiff and other Class Members were also frequently instructed to clock back in and return to the production floor less than thirty (30) minutes after being dismissed for their meal breaks when a supervisor determined that the food materials had not been properly covered or stored prior to the meal break or food products needed to be moved to prevent spoilation.  On those occasions, Plaintiff and other Class Members were required to return to the production floor before the end of their thirty (30) minute meal break to secure the food products so it would remain fit for human consumption.

58. Because Plaintiff and other Class Members were in contact with egg and meat products such as pastrami, salami, ham, and turkey in the regular course of performing their duties, they were required to doff their protective clothing and equipment and wash their hands at the start of their meal breaks to avoid spreading bacteria, and meat byproducts outside of the

production floor. Plaintiff and other Class Members were also required to don their protective clothing and equipment and wash their hands before returning to the production floor at the end of their meal breaks to avoid contaminating the food products.

59. Plaintiff and other Class Members routinely lost anywhere between ten and fifteen minutes of their meal breaks.

60. Under the IMWL, "An employee's meal periods…are compensable hours worked when such time is spent predominantly for the benefit of the employer, rather than for the employee." 56 Ill. Admin. Code § 210.110.

61. Plaintiff and other Class Members also should have been paid for the time their meal breaks were spent predominantly for the benefit of Defendant.

62. Because their meal periods were predominantly for the benefit of the employer, the time Defendant deducted from Plaintiff's and other Class Members' work hours to account for a thirty-minute meal period constituted "hours worked" under the IMWL.

## CLASS ACTION ALLEGATIONS

63. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed classes, which are comprised of:

**Illinois Minimum Wage Law Class**

> **All current and former hourly paid employees of Defendant who were paid for working at least 37.5 hours at Defendant's Caseyville Plant in at least one week between January 2, 2023 and the final resolution of this Action.**

**Illinois Wage Payment and Collection Act Class**

> **All current and former hourly employees of Defendant whose duties involved the manufacturing, packaging, or handling of food or food products and who worked for**

**Defendant in at least one week in Illinois between January 2, 2016 and the final resolution of this Action.**

64. Plaintiff and Class Members are not exempt from the IMWL.

65. Plaintiff and Class Members are not exempt from the IWPCA.

66. Defendant agreed to pay Plaintiff and Class Members an hourly rate of pay for all time worked.

67. Under the IWPCA, Plaintiff and Class Members are entitled to be paid their agreed upon hourly rate for all time they worked in individual work weeks.

68. Under the IMWL, Plaintiff and Class Members who work more than forty (40) hours in an individual work week are entitled to receive one and one-half times their regular rate of pay for all overtime hours they worked.

69. Plaintiff's regular rates of pay are identified on his pay stubs.

70. Class Members' regular rates of pay are identified on their pay stubs.

71. Plaintiff and the Classes are similar to one another because they were all subject to the same allegedly illegal practices: failing to pay overtime wages under the IMWL for time associated with various required activities arising on the Caseyville Plant premises at the beginning and end of the workday; and spending their meal breaks predominantly for the benefit of Defendant.

72. Defendant employed more than 100 hourly paid workers at the Caseyville Plant in the prior three (3) years.

73. As a result, the Class is so numerous that joining all Class Members in one lawsuit is not practical.

74. Plaintiff's claims are typical of the Class Members' claims because as a result of

Defendant's uniform policies, Plaintiff and Class Members were not paid for all overtime wages earned in individual work weeks under the IMWL and are collectively owed significant unpaid overtime wages at the rate of one-and-one half times their regular rates.

75. Plaintiff and his counsel will fairly and adequately protect the interests of the Classes.

76. Plaintiff retained counsel experienced in wage and hour class action litigation.

77. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

   a. Whether Defendant's practice of failing to pay for all time associated with various required activities arising on Defendant's premises at the beginning and end of the workday violates the IMWL and the IWPCA;

   b. Whether Defendant failed to pay Plaintiff and the IMWL Class wages for all overtime hours worked; and

   c. Whether Defendant failed to pay Plaintiff and the IWPCA Class all the wages they earned;

   d. The proper measure of damages sustained by Plaintiff and the Classes.

78. These common questions of law and fact predominate over the variations that may exist between Plaintiff and the members of the Classes, if any.

79. Plaintiff, the Class Members, and Defendant have a commonality of interest in the subject matter of the lawsuit and the remedy sought.

80. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The damages suffered by the individual Class Members are

small compared to the expense and burden of individual prosecutions of this litigation. Prosecuting hundreds of identical, individual lawsuits would not promote judicial efficiency or equity. Class certification will eliminate the need for duplicate litigation.

81. The prosecution of this matter in hundreds of identical, individual lawsuits would create a risk of inconsistent results and would establish incompatible standards of conduct for Defendant.

82. The identities of the Class Members are readily identifiable from Defendant's records.

## COUNT I

### Violation of the Illinois Minimum Wage Law

83. Plaintiff hereby incorporates and realleges the foregoing paragraphs as though set forth herein.

84. The IMWL entitles covered employees to overtime compensation of not less than one and one-half (1 1/2) times the employees' regular rate of pay for all hours worked in excess of forty (40) in one work week. *See* 820 Ill. Comp. Stat § 105/4a(1).

85. Plaintiff worked in excess of forty (40) hours at the Caseyville Plant in at least one individual work week in the prior three years.

86. At least 100 hourly paid employees of Defendant worked in excess of 40 hours in at least one individual work week in the prior three (3) years at the Caseyville Plant.

87. As described in the foregoing paragraphs, Defendant's practice of not paying for time associated with various required activities arising on the Caseyville Plant premises at the beginning and end of the workday are in violation of the IMWL. *See* 820 ILCS §§ 115/1 *et seq.*

88. As described in the foregoing paragraphs, Defendant's meal break practices deprived Plaintiff and Class Members of the ability to take meal breaks that were spent predominantly for the benefit of employees.

89. Defendant knowingly failed to compensate Plaintiff and the IMWL Class Members for hours worked in excess of forty (40) hours in a work week, in violation of the IMWL.

90. Pursuant to 820 Ill. Comp. Stat. § 105/12(a), Defendant is liable to Plaintiff and IMWL Class Members for, *inter alia*, unpaid overtime wages in the amount of one-and-one-half times their regular rates for three years prior to the filing of the lawsuit, treble damages, statutory penalties in the amount of five percent (5%) per month of the amount of underpayment, and reasonable attorneys' fees and costs.

## COUNT II

**Violation of the Illinois Wage Payment and Collection Act – Unpaid Wages**

91. Plaintiff hereby incorporates and realleges the foregoing paragraphs as though set forth herein.

92. The IWPCA requires employers to pay employees within thirteen days after the end of a semi-monthly or bi-weekly pay period or within seven days after a weekly pay period in full at the lawful rate. *See* 820 Ill. Comp. Stat. § 115/4.

93. If an employer fails to pay an employee all wages earned by the statutory deadline, the employee may commence a civil action to recover the amount of any underpayment and damages in the amount of five percent (5%) of each underpayment compounded monthly, plus costs and reasonable attorneys' fees. *See* Ill. Comp. Stat. § 115/14.

94. Pursuant to 735 Ill. Comp. Stat. § 5/13-206, the statute of limitations applicable to the IWPCA is ten years after accrual of the cause of action.

95. Plaintiff and the IWPCA Class Members are employees for purposes of the IWPCA. *See* 820 Ill. Comp. Stat. § 115/2.

96. Defendant is an employer for the purposes of the IWPCA. *See* 820 Ill. Comp. Stat. § 115/2.

97. Defendant's actions, policies, and/or practices as described above violate the IWPCA by failing to compensate Plaintiff and the IWPCA Class Members for all time they worked at the hourly rates Defendant agreed to pay them for the work they performed.

98. As a direct and proximate result of this practice, Plaintiff and the IWPCA Class Members have suffered loss of income and other damages to be determined at trial.

99. As such, Defendant is liable to Plaintiff and IWPCA Class Members for all unpaid hourly wages, damages in the amount of five percent (5%) per month of the amount of the underpayment, and reasonable attorneys' fees and costs. *See* 820 Ill. Comp. Stat. § 115/14.

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and on behalf of all Class Members, prays that the Court:

1. Certify that this action may proceed as a class action;

2. Appoint Plaintiff as Representative of the Class, and appoint his counsel as Class Counsel;

3. Find and declare that Defendant's policies and/or practices described above violate the IMWL and IWPCA;

4. Award all unpaid overtime wages at the rate of one-and-one half times Plaintiff's

and Class Members' regular rates, treble damages, statutory penalties, interest, and/or restitution to be paid by Defendant for the causes of action alleged herein;

5. Award costs, and expenses, including reasonable attorneys' fees and expert fees;

6. Award pre-judgment and post-judgment interest, as provided by law; and

7. Order such other and further legal and equitable relief the Court deems just, necessary and proper.

Dated: January 2, 2026

Respectfully submitted,

*s/Douglas M. Werman*

Douglas M. Werman
Maureen A. Salas
**WERMAN SALAS P.C.**
77 W. Washington St., Ste 1402
Chicago, IL 60602
Tel: (312) 419-1008
dwerman@flsalaw.com
msalas@flsalaw.com